**GREENBERG TRAURIG, LLP**
**ATTORNEYS AT LAW**
**SUITE 800**
**2375 EAST CAMELBACK ROAD**
**PHOENIX, ARIZONA 85016**
**(602) 445-8000**

Andrew F. Halaby, SBN 017251; andy.halaby@gtlaw.com
Rebekah S. Guyon, Rebekah.Guyon@gtlaw.com *(Pro hac vice)*
Kacie M. Donovan, SBN 037093; kacie.donovan@gtlaw.com
*Attorneys for Defendant Signet Jewelers Limited*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Claudette Torrez, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Signet Jewelers Limited,<br><br>Defendant. | Case No. 2:24-cv-01332-SMB<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DOC. 1)**<br><br>(Assigned to the Hon. Susan M. Brnovich) |

Defendant Signet Jewelers, Limited ("Signet") moves to dismiss Plaintiff Claudette Torrez's ("Torrez" or "Plaintiff") Class Action Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), lack of standing under Article III of the Constitution pursuant to Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim under Rule 12(b)(6).[1]

Pursuant to L.R. Civ. 12.1(c), undersigned counsel certifies that, before filing this motion, undersigned counsel notified Plaintiff's counsel of the issues asserted in the

---

[1] Should this dispute proceed, it may be subject to arbitration and a prohibition of class, representative, and consolidated actions. *See, e.g.*, Terms of Use, Signet Jewelers, https://www.signetjewelers.com/terms-of-use/ (last visited August 23, 2024). Signet has thus far been unable to investigate the dispute's arbitrability because Plaintiff refused to provide Signet with her email address. In responding here, Signet reserves and does not waive its right to move to compel arbitration or assert any other defense or argument once it receives necessary information from Plaintiff.

motion and the parties were unable to agree that the Complaint was curable in any part by a permissible amendment offered by Plaintiff.

## I.   INTRODUCTION

This lawsuit is of one of fourteen (eleven of which were filed by Plaintiff's counsel) essentially identical putative class actions seeking to exploit a narrow Arizona statute drafted to apply to telephone *utility* records, not Plaintiff's own decision to sign up for and receive marketing emails from an online retailer. In each of their cases, Plaintiff's counsel attempts to bolster Plaintiff's conclusory allegations with a long narrative regarding an allegedly salacious corporate ingestion at Hewlett-Packard—which is not a party to this case, and has no relationship to Signet—from ***over twenty years ago***, ostensibly to attempt to draw comparisons between corporate espionage and the use of technology to gather non-sensitive email metadata from individuals, like Plaintiff, who elect to receive marketing emails from popular brands. The analogy fails. Here, Plaintiff alleges that Signet uses software code in the emails that she requested Signet send to her to identify whether and how she engaged with those emails. Plaintiff claims that Signet's collection of this non-sensitive information violates Arizona's Telephone, Utility, and Communication Service Records Act, A.R.S. § 44-1376, *et seq.* ("ATUCSRA" or the "Act").

The Complaint should be dismissed for three reasons: (1) Plaintiff has alleged no facts that plausibly establish personal jurisdiction over Signet in Arizona for these claims; (2) Plaintiff has not alleged an injury sufficient for Article III standing; and (3) Plaintiff fails to state a claim because the statute does not apply to the actions alleged.

**First**, Plaintiff alleges no facts connecting Signet's conduct to Arizona; her residency in the state and decision to request marketing email from Signet does not satisfy due process requirements to subject Signet, an out-of-state entity, to personal jurisdiction in this state, as controlling case law holds.

**Second**, Plaintiff lacks standing because she does not allege a concrete injury. Her

conclusory assertions that Signet "invaded her privacy" or "intruded upon her seclusion" do not suffice. Further, Signet's collection of her non-sensitive metadata from emails that she asked Signet to send is not a concrete harm.

**Third**, even if Plaintiff had standing, Plaintiff fails to state a claim under ATUCSRA. The plain statutory language, legislative history, and comparison to analogous statutes demonstrate that ATUCSRA does not apply here.

These errors are fatal. The Complaint should be dismissed.

## II.  BACKGROUND

### A.  Plaintiff And Her Claims.

Signet is the world's largest retailer of diamond jewelry and owns brands such as Kay Jewelers, Zales, and Jared. Compl. ¶ 12; Brands, Signet Jewelers, https://signetjewelers.com/brands/ (last visited August 25, 2024).

Plaintiff claims to be an Arizona resident. Compl. ¶ 7. Plaintiff claims that she has "subscribed to Defendant's email list," although she does not identify which email list out of the Signet family of brands. Compl. ¶ 3. Plaintiff does not allege when she signed up for Signet's marketing list. Plaintiff claims that as a result of Signet allegedly embedding "hidden spy pixel trackers" in the marketing emails that she asked Signet to send, Signet acquired the time and place subscribers open and read their messages, how long it takes the subscriber to read the email, subscribers' location, subscribers' email client type, subscribers' IP address, subscribers' device information and where and whom the email was forwarded to." Compl. ¶¶ 3-4, 44.

Plaintiff alleges no harm as a result of this conduct. Apart from her conclusory allegations that Signet's acquisition of her non-sensitive email metadata "procured her sensitive email information," "invaded her privacy, and "intruded upon her seclusion," she fails to identify any specific information that Signet allegedly acquired from her without permission and that caused her injury. Compl. ¶¶ 5, 9.

The collection of information that Plaintiff complains of is disclosed in, and

consistent with, Signet's Privacy Policy[2]. Signet's Privacy Policy in place since August 3, 2023,[3] states that Signet collects "identifiers," "your Internet Protocol ('IP'), unique device identifier, [and] device characteristics . . ." Donovan Decl. ¶ 2, Ex. A at 1. Signet discloses that it "collect[s] and store[s] information about . . . ***how you interact with emails that we send to you***." *Id.* at 2. (emphasis added). Signet expressly discloses that it uses technology to determine "whether you have opened an email we sent to you." *Id.* at 4.

## III.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.   Legal Standard

Arizona's long-arm statute provides that an Arizona court may exercise personal jurisdiction over a nonresident defendant to the maximum extent permitted under the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Martinez v. Zuniga*, 547 P.3d 371, 372 (Ariz. Ct. App. 2024). To satisfy due process, a defendant must have sufficient "minimum contacts" with the forum State such that "maintenance of the

---

[2] The Privacy Policies are posted publicly at Signet's website at https://signetjewelers.com/privacy-policy/. Thus, their authenticity is not in question, and the Court may take judicial notice of the contents of Signet's website. *See Brown v. Google LLC,* 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of Google's privacy policy). The governing Privacy Policy from December 30, 2019, to August 3, 2023, as retrieved from the Wayback Machine, is attached to the Declaration of Kacie Donovan ("Donovan Decl"), submitted herewith, as Exhibit B. *Brown*, 525 F. Supp. 3d at 1061. ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). The governing Privacy Policy from August 3, 2023, to present, as currently displayed on Signet's Website, is attached to the Donovan Decl. as Exhibit A.

[3] The previous iteration of Signet's Privacy Policy, in place from December 30, 2019, to August 2, 2023, has substantially similar terms. *E.g.*, Donovan Decl. ¶ 3, Ex. B at 2 ("We may link certain data elements we have collected through automated means, such as your browser information, with other information we have obtained about you for the purposes described below, and to let us know, for example, whether you have opened an email we sent to you" . . . "We may use local shared objects to collect and store information about your preferences . . . , including emails that you open, forward or click-through to our Website . . . .")

4

suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). Plaintiff "bears the burden of establishing that jurisdiction is proper." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

### B. Plaintiff Has Not Alleged Facts Sufficient To Show That Signet Is Subject To Personal Jurisdiction Here.

#### 1. Plaintiff Has Not Alleged Facts Sufficient To Show That Signet Is Subject to General Jurisdiction.

As Plaintiff alleges, Signet is a Bermuda corporation with its principal place of business in Akron, Ohio. Compl. ¶ 11. It is not, therefore, subject to general jurisdiction in this State absent evidence of "affiliations with the state [that] are 'continuous and systematic' . . . to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The standard is "exacting," "because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Here, Plaintiff alleges that Signet "owns and operates 10 Zales stores in the state of Arizona," but "merely 'doing business' is insufficient to establish general jurisdiction." *Goodwin v. Best Plan, Int'l Ltd.*, 2004 WL 1924147, at *3 (N.D. Cal. Aug. 30, 2004). In tacit recognition, Plaintiff does not assert that the Court has general personal jurisdiction over Signet. *Cf.* Comp. ¶ 14.

#### 2. Plaintiff Has Not Alleged Facts Sufficient To Show That Signet Is Subject to Specific Jurisdiction.

Specific jurisdiction is appropriate only where a defendant has purposefully directed its activities at the forum state and a plaintiff's claims arise from defendant's forum-directed conduct. *Schwarzenegger*, 374 F.3d at 802. If a Plaintiff's claim sounds in tort, she must satisfy the "purposeful direction" test by plausibly alleging that: 1) the defendant committed an intentional act; 2) expressly aimed at the forum state; 3) causing harm that the defendant knew was likely to be suffered in the forum state. *Pebble Beach*

5

*Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). The "determinative question" is "whether [defendant's] conduct was expressly aimed" at the forum state. *Id.* If the court determines that a defendant purposefully directed its activities towards the forum, it then must determine if the claim "arises out of or relates to the defendant's forum-related activities" and whether the exercise of jurisdiction "comports[s] with fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 802.

Plaintiff's conclusory allegations are insufficient to establish the Court's specific personal jurisdiction over Signet. Compl. ¶ 14 ("The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of Defendant's forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.").

Even read charitably, the only specific conduct that the Complaint alleges is that Signet sent "marketing emails" containing a "pixel" to Plaintiff. *E.g.*, Compl. ¶¶ 4, 44, 46. But online activity must show a "forum-specific focus" to give rise to specific jurisdiction. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 867 (S.D. Cal. 2023) (holding that allegations that defendant's recording of details of plaintiff's visit to defendant's website, which plaintiff alleged that defendant knew was likely to collect information "from California citizens," was insufficient to support specific jurisdiction for an invasion of privacy claim); *see also, e.g.*, *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 969 (C.D. Cal. 2023).

Nowhere does Plaintiff allege that Signet targeted its emails towards Arizona specifically, that the emails had any Arizona-directed content, or that any other nexus exists between the emails and Arizona other than Plaintiff's current residence. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (holding that "the plaintiff cannot be the only link between the defendant and the forum"). And it is black-letter law that Plaintiff's conduct

6

of reaching out to Signet from within Arizona, by requesting that Signet send marketing emails, cannot demonstrate purposeful direction by Signet targeting the forum. *Id.*; *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) ("[T]he relationship between the nonresident defendant, the forum, and the litigation must arise out of contacts that the defendant himself creates with the forum State.").

### IV.  MOTION TO DISMISS FOR LACK OF ARTICLE III STANDING

#### A.  Legal Standard.

Under Rule 12(b)(1), a claim must be dismissed for lack of subject matter jurisdiction when a plaintiff fails to allege facts sufficient to establish standing under Article III. *Satanic Temple, Inc. v. City of Scottsdale*, 423 F. Supp. 3d 766, 772 (D. Ariz. 2019) (*citing Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)). "Article III standing requires a concrete injury even in the context of a statutory violation"—an injury that is more than a "bare procedural violation divorced from any concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426, 440 (2021) (cleaned up). The minimum injury required must bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425.

#### B.  Plaintiff Fails To Plausibly Allege A Concrete Harm.

Plaintiff pleads no injury arising out of Signet's alleged violation of A.R.S. § 44-1376.01. The Complaint contains only conclusory allegations of "invasion of privacy" or "intrusion upon seclusion" based on Signet's use of email pixels. Compl. ¶ 5 ("Defendant's invasive surveillance of Plaintiff's sensitive reading habits and clandestine collection of her confidential email records invaded her privacy and intruded upon her seclusion."). Though courts have traditionally recognized these torts as a basis for lawsuits in American courts, integral to such claims is an invasion that would be "highly offensive to a reasonable person." *Six v. IQ Data Int'l Inc.*, 673 F. Supp. 3d 1040, 1045 (D. Ariz. 2023) (quoting Restatement (Second) of Torts § 652B); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1048 (N.D. Cal. 2022) (quoting Restatement (Second) of

7

Torts § 625D)).

Plaintiff has not alleged that Signet's alleged "invasion" or "intrusion" would be highly offensive to a reasonable person. Plaintiff makes no effort to explain what makes the information Signet allegedly collected private and why a reasonable person would consider its collection highly offensive. Nor could she. Indeed, a federal court recently dismissed, for lack of standing, a nearly identical lawsuit alleging ATUCSRA violations arising out of marketing email pixels. *Hartley v. Urb. Outfitters, Inc.*, 2024 WL 3445004 (E.D. Pa. July 17, 2024). As *Hartley* recognized, courts routinely find that the kind of metadata Plaintiff alleges Signet collected here is "not of the kind in which a party has a reasonable expectation of privacy." *Id.* at *6.

Plaintiff alleges that Signet collected "the time and place subscribers open and read their messages" and "how long it takes the subscriber to read the email." *E.g.*, Compl. ¶ 4. As *Hartley* explained, "As a matter of law . . . digital records reflecting merely the dates and times at which Plaintiff opened promotional emails she signed up to receive, and the length of time she spent reading them, are not sufficiently personal to support a concrete injury." 2024 WL 3445004, at *7. On the contrary, courts have long held that collection of this kind of metadata about when and how long a user interacts with a piece of digital marketing does not give rise to an Article III privacy injury. *See, e.g.*, *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no privacy injury in recording of mouse movements and clicks on website); *Popa v. PSP Grp., LLC*, 2023 WL 7001456, at *4 (W.D. Wash. Oct. 24, 2023) (same); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023) (same).

Plaintiff's allegations regarding Signet's alleged collection of "subscribers' email client type" and "subscribers' device information" fare no better. *E.g.*, Compl. ¶ 4. As the court in *Hartley* held, "Plaintiff fails to sufficiently allege how she was harmed by Defendant gleaning the type of device, operating system, or email viewing platform she used to read Defendant's emails, and in any event, such details are not comparable to

those traditionally contemplated as giving rise to a reasonable privacy interest." 2024 WL 3445004, at *6.

So too Plaintiff's allegations regarding Signet's alleged collection of "subscribers' location" through their "IP address." Compl. ¶¶ 4, 9, 31; *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("Plaintiffs do not allege anything more than the collection of IP addresses, and there is no legally protected privacy interest in IP addresses" because "IP addresses are voluntarily turned over in order to direct the third party's servers").

Even if the Court were to infer that Signet can understand the effectiveness of its marketing emails from the information allegedly collected by the pixel (*e.g.*, which emails were opened and what links were clicked), there is no protected privacy interest in this information. This information was allegedly provided to *Signet*, the sender of the communications, and the retailer whose emails Plaintiff signed up for—making this activity no more private than browsing shelves in a brick-and-mortar store. *Cook*, 689 F. Supp. 3d at 66 ("[Plaintiff] certainly doesn't have a reasonable expectation of privacy in this kind of public shopping behavior in the physical world, and she doesn't have it in the digital world, either."). In short, "Plaintiff does not allege that she disclosed any sensitive information to Defendant," and so she lacks standing. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023).

Further, Plaintiff's claims that she had any expectation of privacy in the non-sensitive metadata Signet collected is undermined by Signet's fulsome disclosures that it would use technology to collect how she interacted with emails, her device and browser information, and her IP address. Donovan Decl. ¶¶ 2, 3, Exs. A & B. Plaintiff's conclusory claim that she subjectively believed innocuous email metadata was private, or that its collection by Signet is a concrete harm, cannot support a plausible injury in fact under Article III.

## V. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citation omitted). Pleadings that only permit a court to infer "the mere possibility of misconduct" are subject to dismissal. *Id.* at 679. And a court will "not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

### B. ATUCSRA.

ATUCSRA is not a catch-all privacy statute. The Arizona Legislature enacted it in 2006 to protect telephone records against "pretexting"—individuals who impersonated consumers to extract information about them from their records. *See* Ariz. Sen. B. Summ., 2006 Reg. Sess. H.B. 2785 (April 24, 2006) (discussing that "there are over 40 'data broker' companies that . . . have fraudulently gained access to telephone records by posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge").

The original version of the statute protected only telephone records. In 2007, the Legislature added similar prohibitions on "pretexting" for "communication service records" and "public utility records." Ariz. H.B. Summ. 2007 Reg. Sess. H.B. 2726 (Apr. 30, 2007). As the Senate sponsor stated, the bill was designed to address the concern that pretexters could "pretend that they're someone else and get your personal information ***from a utility***." *H.B. 2726: Hearing Before the Sen. Comm. On Commerce & Econ. Dev.*, 48th Leg. 1st Reg. Sess. (Ariz. 2007) (statement of Sen. Farnsworth). Against this

1  backdrop, the Legislature passed the Act.

2  Plaintiff cites a scandal at Hewlett-Packard as the alleged legislative motion for
3  ATUCSRA, but *nothing* in the Act's legislative history supports this attempt to
4  sensationalize the routine marketing conduct alleged here. *Cf.* Compl. ¶¶ 16-29.

5  **C.    Plaintiff Fails To Allege A Violation Of ATUCSRA.**

6  Plaintiff's sole claim is that Signet "procure[d]" Plaintiff's "communication
7  service records" without her permission in violation of A.R.S. § 44-1376.01.[4] Even if
8  she had standing, Plaintiff would fail to state a claim under ATUCSRA because:

- "Communication services records" must come from a "communication service" provider – which Signet is not, *infra* § V.C.1;

- Plaintiff does not plausibly allege that Signet collected "communication service records," *infra* § V.C.2;

- Plaintiff has not alleged that she is Signet's "customer," *infra* § V.C.3; and

- Plaintiff has not plausibly alleged that Signet acted "without authorization." *Infra* § V.C.4.

**1.    "Communication services records" must come from a "communication service" provider—which Signet is not.**

**a.    The statutory definition of "communication service record" demonstrates that it is only a record kept by a communication service.**

The Act defines "communication service record" as:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features. Communication service records do not include the content of any stored oral, wire or electronic

---

[4] To the extent Plaintiff purports to bring claims based on statutory violations as far back as 2020, a two-year statute of limitations bars any claims based on these older alleged violations. A.R.S. § 44-1376.04(B).

communication or a telephone record.

A.R.S. § 44-1376(1).

This definition encompasses information that is only to be kept by a communication service—such as an internet service provider or a wireless data carrier. For example, references to "toll bills," "installation address," and "length of service," are records that communication services would maintain. It would be nonsensical for this information to be in the definition of a "communication service record" if that term was meant to reach *any* business that communicates with a customer—because only businesses like internet service providers or wireless data carriers keep these kinds of records.[5] *See Est. of Braden ex rel. Gabaldon v. State*, 266 P.3d 349, 352 (Ariz. 2011) ("Because the [statutory] phrase 'other legal entity' follows more specifically enumerated (and generally private) business entities, the phrase is most reasonably interpreted as applying to such entities rather than to governmental bodies"); *Planned Parenthood Comm. of Phoenix, Inc. v. Maricopa Cnty.,* 375 P.2d 719, 722 (Ariz. 1962) (applying the "noscitur a sociis" canon providing that a statutory term is interpreted in the context of the accompanying words).

---

[5] This reading is supported by other statutes governing communication service records, such as the Arizona Eavesdropping and Communication Act ("ECA"). A.R.S. § 13-3018. The ECA provides a procedure for criminal prosecutors to subpoena "communication service records." The ECA's definition of "communication service record" is identical to ATUCSRA's. *Id.* § 13-3018(G). The ECA allows a criminal prosecutor to obtain a "communication service record" by issuing a subpoena "to a communications service provider," and that such records would be "used and kept by the communication service provider." *Id.* §§ 13-3018(B), (D)(1). The ECA makes clear that "communication service records" are records held by communication service providers. Thus, based on analogous statutory terms, the phrase "communication service record" used in the Act cannot broadly apply to *any* business that communicates with a customer. *Maricopa Cnty. v. Barkley*, 812 P.2d 1052, 1056 (Ariz. App. 1990); *Qasimyar v. Maricopa Cnty.*, 483 P.3d 202, 209 (Ariz. App. 2021), *as amended* (Aug. 12, 2021) ("[A] word or phrase used in related statutes should be construed to bear the same meaning throughout.").

### b. The Act's construction confirms that "communication service records" must be kept by a communication service.

The Act's construction confirms that "communication service" must modify "records" in a way that limits the definition by the entity that holds the records. Section 44-1376(4) defines a "public utility record" to include much of the same information as a "communication service record": "name, billing or installation address, length of service," and "payment method." *Id.* Thus, a "public utility record" is a record held by a public utility. A "communication service record" must thus be a record held by a communication service. Otherwise, the "public utility" and "communication service" language in each definition would be superfluous, an outcome that principles of statutory interpretation do not allow. *Plaza v. Chase Home Finances LLC*, 2011 WL 13233550, at *4 (D. Ariz. July 27, 2011) (quoting *Mejak v. Granville*, 136 P.3d 874, 876 (Ariz. 2006)) (when this Court interprets Arizona statutes, it strives to "give effect . . . to each word as appropriate" and ensure "that no provision is rendered meaningless, insignificant, or void.").

### c. The Act's legislative history confirms that "communication service records" must be kept by a communication service.

If the Court were to find any ambiguity as to the Act's plain meaning (it should not), the Act's legislative history further renders Plaintiff's reading implausible. *State v. Cota*, 319 P.3d 242, 247 (Ariz. App. 2014). As recounted *supra* § V.B, the Arizona Legislature enacted ATUCSRA in response to a specific concern: that "pretexters" could pretend that they're someone else and get individuals' personal information and records from communication services providers with which those individuals held accounts. *See H.B. 2726: Hearing Before the Sen. Comm. On Commerce & Econ. Dev.*, 48th Leg. 1st Reg. Sess. (Ariz. 2007) (statement of Sen. Farnsworth) (according to the Senate Sponsor, the Act was designed to address the concern that pretexters could "pretend that they're someone else and get your personal information . . . .").

13

In sum, plain language, construction, and legislative history demonstrate that a "communication service record" must come from a "communication service" provider. But Plaintiff does not allege that Signet is a communication service provider. Nor does she allege that Signet procured any records created and held by any of her communication service providers. Rather, the Complaint alleges that Signet created their own records about Plaintiff's receipt of marketing emails from Signet—emails that Plaintiff requested Signet to send. *See, e.g.*, ¶ 4 (alleging that Signet procures various information about "an email" from *Signet*), ¶ 9 (same). The Court should decline Plaintiff's invitation to rewrite the statute to reach *any* business that communicates with a customer—including retailers like Signet, rather than a "communication service record" maintained by a communication service provider.

### 2. Plaintiff does not plausibly allege that Signet collected "communication service records."

Plaintiff makes the conclusory allegation that Signet "procured" her "communication service records." *E.g.*, Compl. ¶ 57 ("Defendant 'procures' Plaintiff's and Class members' 'communication service records' because they 'obtain by any means, including electronically' Plaintiff and Class members' 'communication service records' as defined in A.R.S. § 44-1376). She does nothing to describe how each piece of data Signet allegedly collected falls within the statutory definition—likely because it does not. The Complaint does not allege that Signet collected anything resembling Plaintiff's "name," "billing or installation address," "length of service," "payment method," "telephone number," or "toll bills." A.R.S. § 44-1376(1). That leaves only three potentially applicable statutory categories: "records of the path of an electronic communication between the point of origin and the point of delivery," "the nature of the communication service provided," and "access logs." Plaintiff does not plausibly allege that Signet collected any information that falls into any of these categories.

**First**, none of the information that Signet allegedly collected plausibly constitutes a "record of the path of an electronic communication between the point of

origin and the point of delivery." This is because, by Plaintiff's own allegations, the information was collected upon the alleged *opening* of Signet's marketing email containing the pixel. *E.g.*, Compl. ¶ 9. And, perhaps obviously, an email cannot be opened until it is delivered. Thus, none of the information that Signet allegedly collected constitutes a "record of the path of an electronic communication *between* the point of origin and the point of delivery." *See, e.g.*, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878-79 (9th Cir. 2002) (information stored on website was not in transit, so could not be "intercepted" for purposes of federal Wiretap Act); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1077-78 (N.D. Cal. 2015) (collecting Ninth Circuit cases involving emails where "the challenged acquisition occurred *after the transmission was completed*" and so no interception could have occurred under the Wiretap Act) (emphasis added); *Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (conclusory allegation that defendant collected information "in real time" did not satisfy California Invasion of Privacy Act's requirement that communications be intercepted while "in transit"), *aff'd,* 2024 WL 937247 (9th Cir. Mar. 5, 2024).

**Second**, none of the information that Signet allegedly collected plausibly constitutes information about "the nature of the communication service provided." The statutory language provides exemplars in this category, including "caller identification," "automatic number identification," "voice mail," "electronic mail, paging," or "other services features." A.R.S. § 44-1376(1). "[W]here general words follow the enumeration of particular classes of persons or things, the general words should be construed as applicable only to persons or things of the same general nature or class of those enumerated." *Wilderness World, Inc. v. Dep't of Revenue*, 895 P.2d 108, 111 (Ariz. 1995). The exemplars demonstrate that "the nature of the communication service provided" means types of services that a customer might obtain from their telecommunications service provider. Plaintiff pleads nothing in this category—her allegations regarding unspecified interactions with marketing emails

15

from a retailer seek to fit a square peg in a round hole.

**Third,** though she pleads with no such specificity, Plaintiff may contend that Signet's alleged collection of "the time and place she opened and read the messages" and "how long she read the email" constitute "access logs." But this argument fails. The statute's definition of "communication service record" is not concerned with the way a user interacts with a given communication, but her interactions with the "communication service" as a whole. A.R.S. § 44-1376(1). When the legislature wanted to protect information about specific communications, it knew how to do so: by referring explicitly to a given "electronic communication." *Id.* ("records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided"). Because such language is lacking, the more plausible reading of "access logs" is logs of when a consumer used a communications *service*, not their interactions with specific communications.

### 3. Plaintiff has not alleged that she is Signet's "customer."

The Act's civil cause of action extends only to "a ***customer*** whose communication service records . . . were procured, sold or received in violation of this article." A.R.S. § 44-1376.04(A) (emphasis added). Though the Act does not define "customer," other statutes defining the term, as well as "customer's" dictionary definition, demonstrate that a person must purchase a product or service from a business to be a "customer" of that business. *E.g.*, A.R.S. § 20-1693 (defining "customer" as "a person who purchases portable electronics or services"); *Customer*, Merriam-Webster.com Dictionary[6], https://www.merriam-webster.com/dictionary/customer (last visited Aug. 21, 2024) (defining "customer" as "one that purchases a commodity or

---

[6] Arizona courts "often consult respected dictionaries for the plain meaning of an undefined term in a statute." *Yollin v. City of Glendale*, 191 P.3d 1040, 1044 (Ariz. App. 2008)

16

service"). Plaintiff fails to allege that she is or was a Signet "customer." She does not allege that she bought products from Signet. Because the Complaint lacks facts supporting Plaintiff's eligibility to sue under the Statute, the Complaint must be dismissed.

### 4. Plaintiff has not plausibly alleged that Signet acted "without authorization."

A.R.S. § 44-1376.01 provides in relevant part:

> A person shall not . . . knowingly procure, attempt to procure, solicit or conspire with another to procure a public utility record, a telephone record or communication service record of any resident of this state ***without the authorization of the customer to whom the record pertains*** or by fraudulent, deceptive or false means.

A.R.S. § 44-1376.01 (emphasis added); *see also* A.R.S. § 44-1376.02 (declining to prohibit "obtaining, using, disclosing or permitting access to any public utility record, telephone record, or communication service record, either directly or indirectly through its agents . . . [w]ith the lawful consent of the customer or subscriber.").

Plaintiff does not plausibly allege that Signet's alleged "procurement" of her email metadata was done "without authorization." Plaintiff makes the conclusory allegation that Signet never received "consent" to use the pixels. *E.g.*, Compl. ¶¶ 4, 10, 45. Indeed, Plaintiff artfully pleads to avoid reference to any terms that govern her relationship as a "subscribe[r]" to Signet's email list. *Id.* ¶ 3. But, as described above, Signet transparently disclosed the collection of the data that Plaintiff complains of in its Privacy Policy. Plaintiff's allegation that Signet's collection of non-sensitive email metadata from her was without authorization is simply not plausible because it was in accordance with a Privacy Policy that governed the marketing email communications Plaintiff elected to receive.

## VI. CONCLUSION

For the foregoing reasons, the Court should grant the Motion and dismiss Plaintiff's Complaint.

RESPECTFULLY SUBMITTED this 26th day of August, 2024.

GREENBERG TAURIG, LLP

By:/s/ *Rebekah S. Guyon*
    Andrew F. Halaby
    Rebekah S. Guyon *(Pro hac vice)*
    Blake M. Bailus *(Pro hac vice forthcoming)*
    Kacie M. Donovan
    *Attorneys for Defendant*